UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DORIAN DAVIS aka WALI AL-TAQUI, CDC #k-78041,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>　　v.<br><br>**E.G. FLORES, et al.,**<br><br>　　　　　　　　　　**Defendants.** | Civil No.　　1:08-CV-1197-JTM (JMA)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

　　　　Plaintiff Dorian Davis ("Davis"), a state prisoner proceeding pro se and in forma pauperis with a First Amended Complaint ("FAC") (Dkt No. 32) in this 42 U.S.C. § 1983 civil rights action, alleged that officials at Kern Valley State Prison ("KVSP") violated his federal constitutional and statutory rights associated with implementation of a regulation that Defendant Warden A. Hedgpeth added to the Department Operations Manual ("DOM"), effective from December 7, 2007 to July 8, 2008, which prohibited prisoners' purchase and possession of prayer oils in their cells, a practice permitted before and after the effective dates of the policy supplement. He also alleged that KVSP officials violated his federal constitutional and statutory rights related to his ability to attend religious services during his incarceration from late December 2007 through May 2009. By Order entered July 2, 2010, the court denied Davis' Motion For Summary

Judgment and dismissed as a matter of law all of his claims other than his First Amendment cause of action and his claim under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc - 2000cc-5 (the "RLUIPA"). (Dkt No. 46.) Remaining defendants Warden Hedgpeth and correctional officers E.G. Flores, J. Castro, and T. Billings (collectively "Defendants") moved for summary judgment on the two remaining claims, pursuant to Federal Rule of Civil Procedure ("Rule") 56 ("Motion"). (Dkt. 48.) On January 18, 2011, this court granted Defendants' motion for summary judgment as to all remaining claims and parties. (Dkt. 67.) Davis appealed.

On May 25, 2012, the Ninth Circuit affirmed the prior dismissal of Plaintiff's Equal Protection Claim and the grant of summary judgment on Davis' First Amendment and RLUIPA claims premised on the temporary suspension of in-cell use of prayer oil. (Dkt. 77.) However, it vacated and remanded for further proceedings as to Davis' First Amendment and RLUIPA claims premised on a prison prohibition of unsupervised inmate-led religious services. This court requested that the parties further brief these remanded issues on July 17, 2012. For the following reasons, Defendants' motion for summary judgment is GRANTED.

## I. BACKGROUND

The facts of this case are familiar to the parties and were summarized in the July 2, 2010 Order denying Davis's Motion for Summary Judgment and dismissing his Retaliation, Equal Protection, and Eighth Amendment claims associated with the conduct challenged in the FAC and the January 18, 2011 Order granting Defendants' Motion for Summary Judgment. See Dkt Nos. 46 & 67. The court repeats the facts and procedural history here only insofar as they are relevant to the remaining First Amendment and RLUIPA claims and pertinent to the resolution of Defendants' Motion.

Davis, a Muslim of the Al-Islam faith, arrived at KVSP in October 2005. KVSP houses level 4 inmates, or the California Department of Correction and Rehabilitation's

("CDCR") most violent prisoners. Defendant's August 3, 2012 Motion for Summary Judgment ("MSJ") at 4. Defendants assert that Level 4 inmates must be supervised at all times for their own safety as well as the safety and security of the institution. Holding religious services at KVSP poses a heightened security risk because KVSP inmates "are confined in a closed, isolated area where contraband can be exchanged and inmates can assault each other." MSJ at 4; Hedgpeth Decl. at ¶ 3. Nevertheless, KVSP permitted Davis and other Muslims to attend formally led religious services at KVSP prior to late December 2007.

But in late December 2007, Defendants were forced to dismiss KVSP's Muslim Chaplain, Bilal Mustafa, "when staff found evidence indicating that he was bringing contraband into the prison and giving it to the inmates." Hedgpeth Decl. at ¶ 6. Mustafa's dismissal and the inability to quickly replace him led to the suspension of all Friday religious services, referred to as "Jumu'ah," which had previously been held in Facility A, from late December 2007 to March 2008. From March 2008 until May 2009, Hedgpeth claims that the "Chaplain's assistant provided coverage for Muslim inmates in Facility A for their Friday [religious][1] services." Id. at ¶ 10. A new Muslim Chaplain was finally hired in May 2009. Opposition to MSJ ("Opp. MSJ") at 2. Defendants assert that "[h]iring a new Facility A Muslim Chaplain proved difficult because [they] did not initially receive any qualified applicants." Hedgpeth Decl. at ¶ 8.

Davis seeks injunctive relief ordering Defendants, among other things, to require defendants Flores and Castro "to allow an inmate minister to conduct Jumu'ah services per C.C.R. §§ 3211(A)," to "cease the custom and illegal action of discrimination of the adherents of Islam and deprivations," and to order amendment of the DOM to permit prisoners to be in Facility A without chaplain supervision. See

---

[1] Davis correctly notes that Defendants have used the phrase "church services" instead of "religious services" or "Islamic services." Out of respect to Davis, this court will use the phrase "religious services."

FAC at 17. He sues Defendants "in their official and individual capacity." Id. at 15. He seeks monetary damages to compensate "for the pain and suffering for their denial of religious practices" as well as punitive damages. Id. at 17-19. Davis also seeks monetary damages to compensate "for the pain and suffering for their denial of religious practices" as well as punitive damages from each defendant. Id.

The parties do not dispute that the named Defendants, all correctional officers, were acting under color of state law in implementing or enforcing the institutional policy formalized as DOM. They only dispute whether Defendants violated any federal right.

## II.  LEGAL STANDARD

A moving party is entitled to summary judgment where "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The court must examine the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). While Rule 56 contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials negating the opponent's claim," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), "the moving party bears the burden of proof at trial, [and] it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).

If the moving party meets its initial burden of production, the burden shifts to the non-moving party to go beyond the pleadings by citing materials in the record to show a genuine issue for trial. Celotex, 477 U.S. at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Nevertheless, the

ultimate burden of persuasion on the motion remains with the moving party. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). Doubt as to the existence of any issue of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## III. DISCUSSION

### A. First Amendment Claim

As the court has previously recognized, "[t]he First Amendment, applicable to the States by reason of the Fourteenth Amendment . . . prohibits government from making a law 'prohibiting the free exercise (of religion).'" Cruz v. Beto, 405 U.S. 319 (1972) (per curiam) (citation omitted). "[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979). While an inmate retains the right of free exercise of religion, it "may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008).

A prison regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also Beard v. Banks, 548 U.S. 521, 528 (2006) (access to newspapers, magazines, and photographs); Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (freedom of association); Lewis v. Casey, 518 U.S. 343, 361 (1996) (access to courts); Prison Legal News v. Lehman, 397 F.3d 692, 699 (9th Cir. 2005) (access to non-subscription bulk mail); Morrison v. Hall, 261 F.3d 896, 901 (9th Cir. 2001) (prison mail regulation); Mauro v. Arpaio, 188 F.3d 1054, 1058 (9th Cir. 1999) (en

banc) (sexually explicit material).  Courts analyze these competing interests by applying a "reasonableness" test to First Amendment challenges and accord prison officials great deference when analyzing the constitutional validity of prison regulations.  See Beard, 548 U.S. at 528-30; Overton, 539 U.S. at 132 (2003); Turner, 482 U.S. at 84-85; Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001).  To determine the reasonableness of a regulation, or its application in a particular situation, a court must analyze: (1) whether there is a valid, rational connection between the regulation and a legitimate and neutral government interest, (2) whether alternative means of exercising the constitutional right exist, (3) the impact the accommodation of the right will have on prison staff and other prisoners, and (4) whether the regulation is an exaggerated response to prison concerns given readily available alternatives.  See Turner, 482 U.S. at 89-91.  As "the judiciary is 'ill-equipped' to deal with the difficult and delicate problems of prison management," Thornburgh v. Abbot, 490 U.S. 401, 407-08 (1989), a court must give "appropriate deference to prison officials," O'Lone, 482 U.S. at 349.

Here, the Defendants move for summary judgment on Davis' First Amendment claim because their need to temporarily suspend Muslim services was reasonable in light of their competing interest to ensure the safety of prisoners.  The Defendants explain that "[religious] services entail a heightened threat to security because participating inmates are confined in a closed, isolated area where contraband can be exchanged and inmates can assault each other."  MSJ at 3.  Defendants further argue that this temporary suspension only precluded Davis from accessing the location where Muslims congregated for Friday services, not from practicing his religion.  See id.  They conclude by asserting that "[t]his temporary suspension amounted to nothing more than a short-term inconvenience that does not

rise to the level of a First Amendment violation." Id.

Davis counters that the suspension prevented him from practicing his religion as required by his religion for a long time, rendering the suspension essentially semi-permanent. See Opp. MSJ at 2-6. No alternative is available for Davis to meet his obligation to attend Jumu'ah. See id. Davis further notes that he and other inmates were allowed to conduct their own unsupervised services for "Tarawih" during the holy month of Ramadan. See id. at 6. Davis does not specify whether the Tarawih services were conducted before or after KSVP discovered that Chaplain Mustafa provided contraband to prisoners. In their response, the Defendants do not address whether the Tarawih services were, in fact, unsupervised.

Davis further argues that prisoners should have been permitted to conduct their own services in either the previous location or a yard in KVSP's facilities that is surrounded by seven or eight manned gun towers. See Opp. MSJ at 7-8. However, these were not reasonable alternatives unless supervision was available, which the Defendants contend it was not. The location of Friday services within KVSP is not the issue. Rather, the problem is that no one was available to supervise inmates in the previous location, and by implication, the yard as well. For example, if a fight were to break out within the yard during services, no employee would be there to stop the fight, which could escalate before KVSP employees could break it up. These accommodations could strain KVSP's security, endangering both prisoners and KVSP's employees. And given that the previous Muslim Chaplain, Mustafa, appears to have provided contraband to the prisoners attending Muslim services, KVSP is right to be weary of permitting such additional freedoms. The Defendants' motion for summary judgment on Davis' First Amendment claim is therefore granted.

### B. RLUIPA

Under RLUIPA, the government may not impose a substantial burden on a person's exercise of religion unless it: (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest. See 42 U.S.C. § 2000cc-1. The Ninth Circuit has found that a substantial burden on religious exercise "must impose a significantly great restriction or onus upon such exercise" San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).

Here, the court agrees that the inability to attend Friday services is a substantial burden on Davis' right to exercise his religious beliefs. As Davis has explained, "[t]he performance of Jumu'ah is central to Islam." See Opp. MSJ at 6. However, the Defendants had a compelling interest in ensuring the safety of all KVSP prisoners and explained that they were unable to find anyone to supervise Friday services so KVSP prisoners could lead their own services until a replacement Muslim Chaplain was hired. See MSJ at 4-5 ("In order to minimize the effect on Muslim inmates on Facility A, KVSP officials looked for a staff member to supervise Friday Muslim services until a new Muslim Chaplain was found."). Once KVSP found another employee to supervise Muslim inmates, they were permitted to gather again for Jumu'ah. See id. at 5.

As previously discussed, Davis has not presented any meaningful alternatives that balances the Defendants' need to ensure the safety of KVSP prisoners with his need (and that of other Muslim inmates) to congregate with other Muslims for Friday services. KVSP eventually permitted its Muslim prisoners to congregate without a Muslim Chaplin as long as they were supervised. Without a less restrictive means of permitting Muslims to congregate while ensuring KVSP

prisoner safety, Davis cannot succeed. The court therefore must grant the Defendants' motion for summary judgment on Davis' RLUIPA claims.

## IV. CONCLUSION AND ORDER

For all the foregoing reasons, Defendants' Motion For Summary Judgment on Davis' First Amendment and RLUIPA claims is hereby GRANTED, disposing of all remaining claims and parties. Judgment shall be entered accordingly, terminating this case in its entirety.

**IT IS SO ORDERED.**

DATED: March 11, 2013

_____
Hon. Jeffrey T. Miller
United States District Judge